

U.S. Department of Justice

United States Attorney
Western District of Texas

903 San Jacinto Ave., Suite 334  (512) 370-1265
Austin, Texas 78701

November 1, 2024

**VIA CM/ECF**
Mr. Lyle W. Cayce, Clerk
Office of the Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

Re:  *United States v. Perez-Gallan*, No. 22-51019

Dear Mr. Cayce,

"When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *United States v. Rahimi*, 144 S. Ct. 1889, 1901 (2024). The Supreme Court held that this principle justified the firearm regulation in Section 922(g)(8)(C)(i), and it applies with equal force to (C)(ii).

Perez's arguments to the contrary are unavailing. Perez repeats the very arguments that the Supreme Court rejected in *Rahimi*, erroneously asserts that (C)(ii) fails because it does not require a finding of sufficient dangerousness, and challenges Congress's authority to enact a firearm law that restricts his right to possess a gun anywhere in the country. These arguments are foreclosed by *Rahimi* and inconsistent with this nation's history and tradition of firearms regulation.

**I.     The statute is constitutional on its face.**

**A.    The panel decision the Supreme Court reversed in *Rahimi* no longer binds this Court.**

The panel decision the Supreme Court reversed in *Rahimi*, including any statement about Section 922(g)(8)(C)(ii), no longer binds this Court. Perez contends that because the Supreme Court only decided the constitutionality of (C)(i), the panel's statements about (C)(ii) remain binding precedent. Def. Ltr. 2.[1] But the Supreme Court rejected the analysis the panel relied on in analyzing *both* provisions because it "misunderstood the methodology of our recent Second Amendment

---

[1] This letter refers to the parties' September 5, 2024 letters as "Def. Ltr." and "Gov't Ltr."

cases." *Rahimi*, 144 S. Ct. at 1897. Because the panel's analysis of (C)(ii) is "unequivocally out of step" with this intervening authority, the Supreme Court has effectively overturned it. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (citation omitted).

In his letter, Perez argues that (C)(ii) is unconstitutional based on the very analysis the Supreme Court rejected. Those arguments are foreclosed and underscore that the two provisions are subject to the same constitutional analysis.[2]

First, Perez suggests that Section (C)(ii) does not have an adequate historical analogue. He purports to distinguish surety and going-armed laws on the grounds that they "targeted public, armed violence," Def. Ltr. 4, while Perez assaulted his partner at home, *see* ROA.185–87. He also claims that domestic violence "was a problem that the government rarely intervened to solve." Def. Ltr. 4. The reversed panel decision similarly reasoned that surety and going-armed laws were inadequate analogues because, *inter alia*, they were not specifically aimed at domestic violence, and because going-armed laws "disarm[ed] those who had been adjudicated to be a threat to society generally, rather than to identified individuals." 61 F.4th at 455, 459.[3] The Supreme Court reversed, holding the panel had erroneously demanded a "historical twin." *Rahimi*, 144 S. Ct. at 1903. Surety and going-armed laws were relevantly similar to Section 922(g)(8), the Supreme Court explained, because they "applie[d] to individuals found to threaten the physical safety of another." *Id.* at 1901; *see also id.* at 1899–1901 (gathering laws). Perez's attempt to revive this foreclosed argument should be denied.

Second, Perez misapplies the legal standard by asking the Court to rule that (C)(ii) is facially unconstitutional based on allegations that some of its applications may be unconstitutional. Perez asserts that "the prevalence of protective orders shows they are not a reliable indicator of dangerousness," including because "[j]udges, fearful of blowback from not issuing an order, err on the side of issuing the order." Def. Ltr. 2–3. The reversed panel opinion and concurrence expressed similar concerns. *See* 61 F.4th at 459; *id.* at 465–67 (Ho, J., concurring). Perez also contends that "[b]ecause a person merely must have notice and an opportunity to participate, a (C)(ii) order may issue without much process." Def. Ltr. 2 (gathering cases). The Respondent in *Rahimi* made the same argument, citing the authorities Perez relies on. *See* Respondent's Br., *Rahimi*, No. 22-915, 2023 WL 6391053, at *46–47 (Sept. 27, 2023).

---

[2] These arguments are intertwined with Perez's claims that (C)(ii) does not require a sufficient showing or "level" of dangerousness, which the Government addresses in Part I.B. below.

[3] Surety laws were not targeted at "public" threats. They "could be invoked to prevent all forms of violence, including spousal abuse." *Rahimi*, 144 S. Ct. at 1900.

The Supreme Court rejected these arguments, too, and held that adopting them was the panel's second error. *Rahimi*, 144 S. Ct. at 1903. "Rather than consider the circumstances in which Section 922(g)(8) was most likely to be constitutional, the panel instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns." *Id.* (citing 61 F.4th at 459; *id.* at 465–67 (Ho, J., concurring)).[4] Notably, the very passages the Supreme Court identified as making this error are the ones Perez relies on. *Compare id. with* Def. Ltr. 3 (citing 61 F.4th at 465, 466 (Ho, J., concurring)). Perez's argument that state courts rubber stamp applications for protective orders also ignores that judges, including state judges, are presumed to decide cases based on the facts and the law. *See Williams Yulee v. Florida Bar*, 575 U.S. 433, 446–47 (2015). And a judicial decree, such as a protective order, is entitled to a "presumption of regularity." *Parke v. Raley*, 506 U.S. 20, 29–30 (1992). Perez's assertion that such orders are overused is insufficient to strike down an Act of Congress.[5]

### B.  (C)(ii) is constitutional because, like (C)(i), it disarms persons who pose a threat to the physical safety of others.

Perez is right that (C)(i) and (C)(ii) apply to different protective orders, but wrong that this distinction makes a constitutional difference. The tradition that permits disarming an individual who "poses a clear threat of physical violence to another," *Rahimi*, 144 S. Ct. at 1901, supports both provisions.

Perez argues that (C)(ii) "does not require that the [underlying] order find the person dangerous," Def. Ltr. 2, and suggests that the order might be issued based on a "vague possibility of danger," *id.* at 4. But as the Government has explained, (C)(ii) applies only when a court has issued a specific injunction. Gov't Ltr. 3. Under traditional equitable principles, courts do not grant injunctive relief to address an unfounded fear or a possibility of remote injury. *See id.*

The Sixth Circuit recently rejected this same argument in a case where, like Perez, the defendant was subject to an order entered by a Kentucky state court and that "restrain[ed] him from harassing, stalking, or threatening his ex-wife." *United States v. Combs*, No. 23-5121, 2024 WL 4512533, at *1 (6th Cir. Oct. 17, 2024).

---

[4]  Perez's argument also ignores the reality that individuals who seek protective orders often fail to obtain them, including in Kentucky. *See* Illinois Amicus Br., *Rahimi*, No. 22-915, 2023 WL 5491326, at *13 (Aug. 21, 2023) ("[I]n 2022, Kentucky courts granted only 5,014 of the 21,085 domestic-violence restraining orders sought by petitioners.").

[5]  The Supreme Court also noted that some of these arguments "appear to sound in due process rather than the Second Amendment." *Rahimi*, 144 S. Ct. at 1903 n.2. The statute satisfies the central requirement of due process: "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *see also* 18 U.S.C. § 922(g)(8)(A).

3

The court explained that "*Rahimi*'s rationale forecloses" the argument that (C)(ii) is facially unconstitutional because "the distinction between Section 922(g)(8)(C)(i) and Section 922(g)(C)(ii) is of no consequence for purposes of [the] indictment":

> [B]oth sections . . . limit disarmament to those found dangerous. While Section 922(g)(8)(C)(i) satisfies that tradition with the express finding that the individual represents a credible threat to the physical safety of such intimate partner, Section 922(g)(8)(C)(ii) establishes the same point by reasonable inference from the fact that a defendant is subject to a restraining order against such violent behavior. And such injunctive relief must have resulted from a hearing required by Section 922(g)(8)(A) during which a court has concluded that a real threat or danger of injury to the protected party exists.

*Id.* at *3 (cleaned up).

Perez also urges the Court to hold that (C)(ii) is unconstitutional because it applies to persons who have been "enjoined from privately using force so minimal it merely causes bodily injury," whereas the government at the founding intervened in domestic violence cases "only when the violence was substantial." Def. Ltr. 4.[6] Force that causes bodily injury is not "minimal."[7] And our nation's tradition permits disarming "citizens who have been found to pose a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902; *see also* Def. Ltr. 4 (acknowledging that domestic violence during the founding era "merited intervention when it . . . posed a credible threat to physical safety"). While (C)(ii) refers to "physical force" and (C)(i) refers to a "threat to physical safety," these phrases are "equivalent" and "reflect the same concern about preventing those deemed physically dangerous to others from using firearms." *Combs*, 2024 WL 4512533, at *3.

## II. The Court should reject Perez's remaining arguments that the statute is unconstitutional as applied to him.

Perez repeats his prior argument that (C)(ii) is unconstitutional as applied to him because the protective order was issued in Kentucky where his partner and child reside, while he was arrested with a gun in Texas. The Government has responded to Perez's previous version of this argument. Govt. Ltr. 4–5.

---

[6] In addition to the reasons explained in this paragraph, this argument also fails because Perez is demanding the Government identify a founding-era domestic-violence statute that matches (C)(ii)—i.e., a historical twin. *See supra* p. 2.

[7] Perez did not use "minimal" force against his partner. He repeatedly struck her in the face and ribs and dragged her to a bathroom. ROA.187.

Perez erroneously argues that his case is distinguishable from *Rahimi* because Rahimi acted violently in public, whereas Perez assaulted his partner in the home. *See* Def. Ltr. 4, 5. Perez misunderstands *Rahimi.* The Supreme Court did not hold that Section 922(g)(8) was constitutional because of *where* Rahimi was violent, a detail mentioned only in the case's factual background. *Rahimi*, 144 S. Ct. at 1894–95; *see also id.* at 1902 (rejecting Rahimi's argument that Section 922(g)(8) is unconstitutional because it bars individuals from "possessing guns in the home").

Perez is also mistaken that any firearms restriction must be geographically limited to where his victims live or to the state or county that issued the restraining order. Section 922(g)(8) reflects Congress's permissible determination that a person who poses a threat such that they must be explicitly prohibited from using physical force against their partner and child is a person who presents a special danger of misusing a firearm. *See Rahimi*, 144 S. Ct. at 1901. Ample evidence supports the judgment that the severity of domestic abuse is heightened when a gun is present,[8] and that domestic abusers endanger not just their partners and family members but also law enforcement officers and the public.[9] Disarming those individuals while the protective order remains in place, regardless of where they choose to travel during that time, is consistent with historical tradition. Even if surety and going-armed laws were limited to the territory of the jurisdiction that enacted them, Perez does not contend that they disarmed defendants only while they were in close proximity to the person who sought the guarantee or in the specific place where they had gone armed. If Perez believed that the state court order against him should be terminated or modified because he no longer posed a threat to others and had a legitimate need to carry a firearm while traveling, then he was required to seek that relief by petitioning the state court—not by violating federal law.[10]

## Conclusion

For the above reasons, the Government respectfully requests that the Court vacate the district court's judgment and remand for further proceedings.

---

[8] The overwhelming majority of States and territories restrict gun possession by persons subject to protective orders or permit the imposition of a firearm disqualification as part of a protective order. *See Rahimi*, 144 S. Ct. at 1904 (Sotomayor, J., concurring); *Chouk v. Chouk*, No. 2022-CA1193-ME, 2023 WL 2193405, at *1 (Ky. Ct. App. Feb. 24, 2023).

[9] *See Rahimi*, 144 S. Ct. at 1906 (Sotomayor, J., concurring) (gathering authorities); Lisa B. Geller et al., *The role of domestic violence in fatal mass shootings in the United States, 2014-2019*, 8 Injury Epidemiology 38, at 5 (2021) (explaining that in more than two-thirds of the mass shootings that occurred from 2014 to 2019, the shooter either had a history of domestic violence or fired at a partner or family member as part of the shooting).

[10] Perez does not explain how or where he intended to dispose of his firearm prior to returning to Kentucky, nor does he acknowledge that the "1,000 miles" between him and his victims was a distance he could travel in less than a day—a speed unimaginable to the Founders.

Respectfully submitted,

Jamie Esparza
United States Attorney

<u>*/s/ Stephanie Cagniart*</u>
Stephanie F. Cagniart
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1. This letter complies with the Court's October 16, 2024, order because it does not exceed five pages.

2. This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced, 14-point serif typeface using Times New Roman, and 12-point typeface for the footnotes.

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart

# CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart
