Shane O'Neal
101 E. Avenue B,
Alpine, TX 79830

November 1, 2024

Mr. Lyle W. Cayce, Clerk
VIA CM/ECF

      Re:   *United States v. Perez-Gallan*, No. 22-51019

Dear Mr. Cayce,

The government urges this Court to find it constitutionally stripped Perez of his Second Amendment rights because a court found that he posed a credible threat of danger to his wife. If that is true, let the government prove it at trial. The government does not seek to do so. Instead, it seeks to punish his possession of a firearm after it proves to a jury that a judge directed him not to commit or threaten domestic violence. Such a disarmament has no analogue in the Nation's historical tradition.

In evaluating the constitutionality of § 922(g)(8)(C)(ii), this Court must determine "why *and* how" § 922(g)(8)(C)(ii) burdens Perez's right to possess a firearm and whether the Nation historically disarmed its citizens for similar reasons, in a similar manner. *United States v. Connelly*, 117 F.4th 269, 273-74 (5th Cir. 2024). It did not. Domestic violence protective orders—particularly the kind that merely direct a person not to abuse his spouse—are a modern innovation to an age-old problem.

    A.   **A factual clarification.**

The government, in responding to Perez's motion to dismiss, put into the record two orders, one issued by a criminal court, ROA.126, and the other by a family court, ROA.127-28. The district court called them "the Court Order" and "the Restraining Order," respectively. ROA.206. The government's indictment does not indicate on which order it relied. ROA.22. The district court analyzed Perez's Second Amendment challenge only considering the Court Order, not the Restraining Order, because the district court found, pre-trial, that the Restraining Order did not meet § 922(g)(8)'s elements. ROA.206-08. The Restraining Order, not considered by the district court, was the only order that contained a finding that allegations indicated a present danger. ROA.184.

The Court Order contained conditions of pretrial release statutorily authorized in cases involving domestic violence charges. Ky. Rev. Stat. § 431.064 (2021). The statute requires the court to determine whether a person charged with those crimes "is a threat to the alleged victim or other family or household member; and is

reasonably likely to appear in court." § 431.064(1). Then, the court must put that finding "on the record if possible" and may impose an array of conditions "to protect the alleged victim of domestic violence or abuse and to ensure the appearance of the person at a subsequent court proceeding." § 431.064(2). It is unclear whether that finding was made or put on the record. ROA.182, ROA.188-91. Also, the statute provides that the conditions may be "imposed without a hearing;" though, the "person may request a . . . hearing . . . to review the conditions." Ky. Rev. Stat. § 431.064(5). Court records show that Perez posted his bond on May 2, 2022, and appeared for a court date on May 10, where he informed the court that he needed more time to retain counsel. ROA.137. The statute does not give any evidentiary standard by which courts must determine whether a person is "a threat," require that determination be put on the record, or condition the imposition of the special conditions on that determination. *Compare* Ky. Rev. Stat. § 431.064(1), (2) *with* Ky. Rev. Stat. § 403.740 (requiring a court to find "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur" before the issuance of "a domestic violence order"). Thus, the government cannot show that Perez was found to be a credible threat after a hearing at which he had an opportunity to participate.

### B. *Why*: Section 922(g)(8)(C)(ii) disarms Perez because a court directed him to follow the law—specifically, it prohibited him from threatening or committing acts of domestic violence.

This Court was correct when it held, in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) (*Rahimi I*), that § 922(g)(8)(C)(ii) is facially unconstitutional because it "disarms people . . . who are simply governed by a civil order that by its terms explicitly prohibits the use, attempted use, or threatened use of physical force." *Id*, at 459. The government concedes that, in this case, it relies on "the same historical analogues that the Supreme Court relied on in *Rahimi*." Gov't Supp. at 3 (citing *United States v. Rahimi*, 144 S. Ct. 1889 (2024) (*Rahimi II*). The government does not explain why those historical analogues support a broader disarmament.

Section 922(g)(8)(C)(ii) reaches a broader swath of people than those who "pose[ ] a clear threat of physical violence to another." *Rahimi II*, 144 S. Ct. at 1901. This Court has "reject[ed] the argument that section 922(g)(8) requires that the predicate order contain an express judicial finding that the defendant poses a credible threat to the physical safety of his spouse or child." *United States v. Emerson*, 270 F.3d 203, 213 (5th Cir. 2001). "While [it] may be generally true [that "temporary and permanent injunctions traditionally require . . . some express judicial finding supporting the court's order"], it is not invariably the case that injunctions must contain such findings." *Id*. at 214. Further, regardless of the assumption that may have underlay

Congress's passage of section (C)(ii), practice shows that protective orders issue often, as here, as a matter of course. *Rahimi I*, 61 F.4th at 465-67 (Ho, J., concurring).

The laws that the government relies on are not analogous to § 922(g)(8)(C)(ii). Surety laws permitted a magistrate to "oblige those persons, of whom there is a probable ground to suspect future misbehavior . . . find[ ] pledges . . . ." *Rahimi II*, 144 S. Ct. at 1899-1900 (quoting 4 Blackstone 251); *see also Rahimi I*, 61 F.4th at 460 (finding (C)(i)'s "'credible threat' finding analogous to "the showing that was required to justify posting of surety to avoid forfeiture"). The historical record supports that "[a] few elite women" sought sureties against husbands after extended periods of extreme abuse in New England. K. Ryan, "The Spirit of Contradiction": Wife Abuse in New England, 1780-1820, 13 Early American Studies 586, 602 (2015). And, surety laws could be used to disarm people who misused firearms. *Rahimi II*, 144 S. Ct. at 1900. However, there is no historical evidence of surety laws disarming people for being abusive towards members of their household. Rather, those required to post a surety to carry a weapon were those who "would publicly ride or go armed to the terror of the people." *N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1, 50 (2022). And, a person disarmed by surety laws "could obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Id*.

Because of the differences between surety laws and § 922(g)(8), they alone were insufficiently analogous to support the constitutionality of § 922(g)(8)(C)(i); only when "[t]aken together" with the going armed laws did they show a historical tradition of disarming individuals who pose a clear threat of physical violence. *Rahimi II*, at 1901; *Rahimi III*, 117 F.4th at 333, n.1 (discussing the divergent treatment of surety laws in *Bruen* and *Rahimi II*). But, the going armed laws were extremely dissimilar from § 922(g)(8)(C)(ii). They prohibited "riding or going armed . . . to terrify the good people of the land" because "[s]uch conduct disrupted the public order." *Rahimi II*, at 1901. The public violence that could result in forfeiture of firearms after a criminal trial, *id.*, was treated very differently at the founding from private violence. Block, The American Revolution, Wife Beating, and the Emergent Value of Privacy, 5 Early American Studies 223, 241-44 (2007).

The Supreme Court appears to have found the divergence between the criminally-sanctioned, public threat sanctioned by the criminal going armed laws and the individualized civil-found threat of (C)(i), *Rahimi I*, 61 F.4th at 459, was sufficiently compensated for by the existence of surety laws that were civil and required a probable ground to suspect future misbehavior. *Rahimi II*, 144 S. Ct. at 1900-01. The differences between the surety and going armed laws and (C)(ii), however, show that

the government's attempt to prove the constitutionality of (C)(ii) by analogizing only to those laws stretches the analogy beyond the breaking point.

This Court is bound by *Rahimi I* to reject the government's reliance on the going armed and surety laws. The parties agree that this panel is not empowered to depart from the Court's previous holdings unless the Supreme Court has rejected the rationale supporting the holding. Gov't. Supp. at 3; Def't Supp. at 2.[1] When the Supreme Court reversed *Rahimi I*, it did not reject this Court's rationale but disagreed with the Court's application of the history to Rahimi's facial challenge. *Rahimi II*, 144 S. Ct. at 1903. The Court misapplied the law governing facial challenges when it relied on the possibility that § 922(g)(8) could disarm "individuals who are not threats to other individuals but also every party to a domestic proceeding (think: divorce court) who, with no history of violence whatever, becomes subject to a restraining order that contains boilerplate language that tracks § 922(g)(8)(C)(ii)." *Rahimi I*, 61 F.4th at 459. That analysis—inappropriate in Rahimi's challenge to (C)(i) and (C)(ii)—controls this facial challenge because Perez is charged only under (C)(ii). (C)(ii) is facially unconstitutional because in all "of its applications" it disarms people after a civil hearing where a judge is not required to make a finding that the respondent poses a credible threat of violence. *Rahimi II*, 144 S. Ct. at 1898.

Even if the government is correct that the statute can survive a facial challenge because people subject to (C)(ii) orders are sometimes found to pose a credible threat of violence, Perez must prevail on his as-applied challenge. The government argues that the state district court that released Perez "necessarily found he presented a threat." Gov't Supp. at 5 (citing Ky. Rev. Stat § 431.064(1)(a), (2)). While it is true that the Kentucky statute authorizes the special conditions "after" a threat determination, there is no requirement that the conditions issue contingent on that determination or mention of an evidentiary standard. *See* Section A, *supra*. Further, it is not clear that any credible threat determination was made at a hearing where Perez was present and had a reasonable opportunity to participate; further, the record indicates he was not represented by counsel. *United States v. Spruill*, 292 F.3d 207, 210-14 (5th Cir. 2002).

---

[1] This Court is no longer bound by *Emerson*'s holding that "Congress legislated against a background . . . that for a temporary injunction to issue there must be a likelihood that irreparable harm will occur." Gov't Br. at 3, n.2. That conclusion about Congress's assumptions was part of the analysis that (C)(ii) had a "barley" "sufficient" "nexus" to the goal of minimizing "the threat of lawless violence," under the "means-end analysis" that this court applied pre-*Bruen*. *United States v. McGinnis*, 956 F.3d 747, 755, 759 (5th Cir. 2020). It was precisely that analysis that was "fundamentally changed" by *Bruen*. *Rahimi I*, at 450.

### C. How: Section 922(g)(8)(C)(ii) disarms Perez by prohibiting him from possessing a firearm anywhere in the Nation, without the possibility of seeking an exception.

As-applied to Perez, § 922(g)(8)(C)(ii) disarmed him, without the possibility of petitioning for an exception, as he traveled throughout the country—far from his wife—while performing a dangerous task, in a dangerous area.

The government urges remand to the district court to address the as-applied challenge in the first instance, Gov't Supp. at 4-5, but the record is sufficiently developed to show (C)(ii) unconstitutional as applied to Perez. Moreover, there is no reason to believe that the issues with § 922(g)(8)'s application to Perez will be elucidated by a trial. Perez's testimony—that he needed a firearm for self-defense—will be of little relevance in a trial where the only issue will be whether he was subject to an order. *See* Fed. R. Evid. 402. Finally, this Court has previously found a valid as-applied challenge based on facts from a motion to dismiss. *Connelly*, 117 F.4th at 273.

The government argues that a temporary restriction on firearm possession need not contain an exception for self-defense. Gov't Supp. at 5 (citing *Rahimi II*, 144 S. Ct. at 1900). But the government's argument ignores the historical tradition on which it relies. Surety laws permitted "an individual [to] obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Rahimi II*, 144. S. Ct. at 1900. In *Connelly*, this Court did precisely what Perez asks the Court to do here: examine the historical record and determine whether his manner of possession was sanctioned by the founders. 117 F.4th at 274-82. The historical tradition supported "a ban on carrying firearms while an individual is *presently* under the influence." *Id*. at 282. Because the pretrial evidence only showed that Connelly unlawfully used marijuana while possessing—not carrying—a firearm, it was unconstitutional as applied to her. Similarly, the historical tradition here supports disarming someone who poses a credible threat of danger. The Supreme Court did not have occasion to determine whether the tradition supported a nationwide or local ban because Rahimi posed a threat and possessed a firearm in the same place. *Rahimi II*, 144 S. Ct. at 1895. The historical tradition does not support a nationwide ban, which did not exist until 1927. *District of Columbia v. Heller*, 128 S. Ct. 2783, 2844 (2008) (Stevens, J., dissenting). Further, the historical tradition supporting disarmament of people found to be a credible threat is local; whatever danger Perez posed to his wife was not exacerbated when he possessed a firearm thousands of miles away from her.

For those reasons, this Court should affirm the district court's dismissal of the indictment.

Respectfully submitted,

s/ Shane O'Neal
SHANE O'NEAL
O'NEAL LAW
101 E. Avenue B
Alpine, Texas 79830
(713) 516-3505
shane@shaneoneallaw.com
*Attorney for Defendant-Appellee*

**CERTIFICATE OF COMPLIANCE**

1. This letter complies with the Court's October 16, 2024, order because it does not exceed five pages.

2. This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced, 14-point serif typeface using Times New Roman.

                                                          /s/ Shane O'Neal
                                                          Shane O'Neal

**CERTIFICATE OF SERVICE**

I certify that on November 1, 2024, I electronically filed this letter with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the cm/ecf system. All participants in the case have been served using the cm/ecf system.

                                                          /s/ Shane O'Neal
                                                          Shane O'Neal